**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONNA AVANT | ) | |
| *Plaintiff* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | CASE NO: 1:21-cv-4441 |
| CRRC SIFANG AMERICA | ) | |
| INCORPORATED, an Illinois | ) | |
| corporation | ) | |
| | ) | |
| *Defendant* | ) | |

**PLAINTIFF'S COMPLAINT AT LAW**

**I.**                                **NATURE OF THE CASE**

This action arises under 42 U.S.C. § 2000 *et seq*. ("Title VII"), 42 U.S.C. § 1981, and 775 ILCS 5/ *et seq.* ("the Illinois Human Rights Act"; "IHRA"), including claims for disparate treatment and constructive discharge, retaliation, and creation of a hostile work environment. Plaintiff Donna Avant ("Avant" "Plaintiff") by and through counsel CANON LAW GROUP, P.C. alleges as follows,

**II.**                                **INTRODUCTION**

In July of 2019, CRRC SIFANG AMERICA, INCORPORATED ("CRRC" "Defendant"), an American subsidiary of the Chinese state-owned CRRC Corporation Limited, alongside then-Mayor Rahm Emanuel and Chicago Transit Authority ("CTA") President Dorval Carter, Junior, proudly announced its hiring of an "initial group of employees" from Chicago's

0064/001
PAGE 1
COMPLAINT

South Side. The hiring of local South Side residents had been a major factor in the decision by the City of Chicago and CTA to award a $1.3 billion contract to Defendant to locally manufacture train cars for the CTA. But even while trumpeting this commitment to diversity and investment in Chicago's predominantly Black South Side neighborhoods, the workplace atmosphere was charged with racial animus. Employees including Plaintiff Donna Avant began experiencing a course of discriminatory conduct including harassment, denial of equal terms and conditions of employment, retaliation, a hostile environment, and ultimately a constructive discharge. Plaintiff timely filed a charge with the Illinois Department of Human Rights ("IDHR") and the IDHR found that of the five issues compromising her charge, four were supported by substantial evidence. This suit followed.

### III.                                      <u>PARTIES</u>

1. Plaintiff Donna Avant is Black woman, a resident of Chicago in Cook County, Illinois, and holds a degree in electric engineering.

2. Plaintiff was employed by CRRC Sifang from June 2018 through December 2019 (the "relevant period").

3. Defendant CRRC Sifang American, Incorporated, is an Illinois corporation.

4. Defendant has offices and a manufacturing facility in Cook County, Illinois at which Plaintiff was employed for the relevant period.

### IV.                           <u>JURISDICTION AND VENUE</u>

5. Jurisdiction of this Court is invoked under 28 U.S.C. § 1331, 1343(a)(4) and 42 U.S.C. § 1981.

6. Subject matter jurisdiction of this Court is invoked over Plaintiff's claims under Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") and under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) and supplemental jurisdiction over the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/ *et seq.* claims under 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391 because the acts complained of by Plaintiff occurred within this judicial district and because the Defendant's principal place of business is within this judicial district.

8. Plaintiff demands a trial by jury under Federal Rule of Civil Procedure 8.

V.            **PROCEDURAL HISTORY**

9. Plaintiff timely filed a charge with the Illinois Department of Human Rights ("DHR") on or about December 3rd, 2019 ("DHR Charge" "the Charge"), a copy of which is attached hereto as "Exhibit A."

10. The DHR Charge covered incidents occurring at least between June, 2018 and December 2019.

11. The DHR charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The respective charge numbers are 2020CF1042 and 21B-2020-00382.

12. The DHR Charge alleged discrimination based on Plaintiff's race of Black, and on five bases or issues: (1) Harassment; (2) Unequal terms and conditions; (3) Denial of an annual review; (4) Denial of time off; and (5) Constructive discharge.

13. The IDHR conducted an investigation, including several interviews and solicitation of evidence from both Plaintiff and Defendant.

14. On May 26, 2021, the IDHR served copies of a Notice of Substantial Evidence and a Notice of Dismissal to Plaintiff and Defendant.

15. The Equal Employment Opportunity Commission issued a Notice of Right to Sue (NORTS) on June 28, 2021.

16. The IDHR investigation returned findings of substantial evidence for four of five issues: (1) harassment; (2) unequal terms and conditions; (3) denial of time off; and (4) constructive discharge. One issue, denial of an annual review, was dismissed.

17. This complaint, alleging harassment and discrimination based on Plaintiff's race in the relevant period, was filed within 90 days of the IDHR's notices.


## VI.                     <u>FACTS</u>

*Plaintiff is Hired by CRRC Sifang America*

18. CRRC Sifang America ("Defendant"; "the Company") is the American subsidiary of CRRC Sifang International, a Chinese state-owned train and train component manufacturer.

19. The Company was awarded a significant contract to manufacture a new generation of train cars for the Chicago Transit Authority's ("CTA's") system. This work on the CTA contract represents the bulk of CRRC's business and was the basis for the development of their facility in Chicago.

20. In negotiating the Company's publicly-funded contract and development of a facility in Chicago, it agreed to hire locally and lauded a commitment to a "diverse" workforce, including hiring from Chicago's historically underrepresented Black South Side communities.

21. Donna Avant is a thirty-nine year old Black woman who lives on the South Side of Chicago. After several years in the work force, Ms. Avant returned to school and secured a degree in electrical engineering.

22. In June of 2018, she was hired to work at CRRC Sifang America, a heavy equipment and train component manufacturer, as a Quality Electrical Engineer. Her job duties included inspecting and documenting First Article Inspection (FAI) of train part components.

23. Ms. Avant was interviewed for the position by two of her eventual supervisors: Vince Li and Ian Wheat, both non-Black. Vince Li is primarily a Mandarin speaker but speaks fluent English.

24. Ms. Avant was hired and began work prior to completion of construction of CRRC Sifang's manufacturing and production facility, and worked out of a temporary office.

25. Throughout her time employed by Defendant, Ms. Avant was an exceptional employee who regularly put in extra time.

26. Ms. Avant's supervisor at the time, Ian Wheat, characterized her as an exceptional employee.

27. CRRC Sifang America repeatedly asked Ms. Avant to appear in media events and meet prominent public figures to highlight and tout their diversity at the same time as she was being subject to discriminatory treatment and retaliation.



**Fig. 1: Plaintiff (black jacket, white shirt) on stage with then-Mayor Emanuel at a company media event**

*Defendant's Excessive Monitoring and Discriminatory Treatment of Plaintiff*

28.  Plaintiff's ultimate supervisor, Li, monitored her work excessively closely, interfered with her ability to properly conduct her work, treated her in a rude manner, denigrated her work performance in front of her colleagues, and threatened her employment.

29. Li would threaten not to allow Plaintiff to take days off that had already been already approved, including her son's graduation, a pattern of conduct he did not engage in with other, non-Black workers.

30. Li's public discriminatory treatment of Ms. Avant emboldened other employees to treat her disrespectfully, including publicly accusing her of theft of train parts.

31. Throughout the Spring and Summer of 2019, Li told Ms. Avant several times in front of other employees, in meetings, and in emails to which other employees were copied that

Li "expected more from her" with what he paid her. Li only subjected Plaintiff to this kind of public embarrassment.

32. Ms. Avant's supervisor at the time, Wheat, stated to IDHR investigators that this treatment was different from how non-Black employees would be treated in similar circumstances.

33. As one example, Wheat stated that Ms. Avant's appearance was made an issue by Li, and he was instructed to talk to Ms. Avant about her appearance, but this was never the case with non-Black employees with similar appearances (i.e., with regards to piercings and tattoos).

34. In fact, Li had pulled Wheat aside and specifically instructed him to take action with regards to Ms. Avant's tattoo. When Wheat pointed out that he himself had a visible tattoo, Li stated that this was not a problem.

35. Wheat stated to IDHR investigators that Ms. Avant was constantly being spied on and was accused of things she did not do on several occasions.

36. On one occasion, this excessive monitoring and differential treatment, which Li initiated and compelled Wheat to participate in, caused Ms. Avant to cry at work.

37. On one occasion, in the Fall of 2019, her supervisor, Wheat, approved Ms. Avant to come in early and leave early for lunch for car maintenance. Li questioned Wheat about this and became upset about the situation—this happened on at least three or four other occasions in a brief time span.

38. A separate witness stated to IDHR investigators that Ms. Avant, the only Black woman in her department, was uniquely closely monitored by Li, and that all of her work was excessively scrutinized differentially from that of non-Black coworkers.

39. This witness relayed an incident in November of 2019—not long before Ms. Avant separated from the company—where Li followed her onto the production floor "in a rage" and screamed at her in an unprofessional manner, despite the fact that she was on the production floor to discuss a work-related matter with an coworker.

40. A third witness stated to IDHR investigators that they had witnessed Ms. Avant discuss with Li another employee's failure to regularly update employee records, and would not respond to her requests that they keep up with these updates. When these records failed to be updated, management would blame Ms. Avant for the lack of updates. This witness testified that this happened "weekly."

41. The incident with the non-performing employee was indicative of Ms. Avant's general treatment, regularly being chided by Li for not performing tasks, or under-performing on tasks, that he knew or should have known were being made impossible.

42. For example, Ms. Avant regularly made requests for information necessary to maintain accurate records on product inspection, and that this information was being communicated, when it was communicated, in Mandarin—an understanding of which was not a job requirement at any point. On at least seven different occasions between July and October 2019, Ms. Avant let management know that this state of affairs was persisting, and no action was taken by management.

43. At one point, when a train part went missing, another non-Black employee, Molly, accused Ms. Avant of stealing it. There was no particular reason to accuse Ms. Avant and not any other employee who had been on the production floor. The part was eventually found. When Ms. Avant complained about this matter, no corrective measures were taken, as corroborated by Ms. Avant's supervisor, Wheat, to investigators.

44. This accusation of theft against Plaintiff was motivated by nasty racial stereotypes.

45. A fourth witness told IDHR investigators that they had seen Li and other management personnel follow Ms. Avant onto the production floor and monitor her, despite the fact that it was part of her duties to discuss approval of parts with production floor employees. This witness told investigators that Ms. Avant was scrutinized more than other people in her department. Ms. Avant was aware of being followed and monitored in this way and felt targeted as a result.

46. Li subjected Ms. Avant to costly and personally taxing discriminatory conduct in regards to frequent work trips that were not part of her original job description. Li would not give Ms. Avant much notice for these trips (including a trip to China), or their cancellations; while she was required to pay for some of these out of pocket and apply for reimbursement, others required to take these trips, including Wheat and another quality engineer, had company credit cards. Ms. Avant was also uniquely denied compensation for meals related to these trips, representing an immediate financial cost. Non-black employees in Ms. Avant's department were not subject to these conditions.

47. On August 21, 2019, Ms. Avant requested August 28, 29 and September 3rd (i.e., Labor Day weekend); she was denied. A non-Black employee, named Tseng, requested September 03 off. He was granted his time off. It was only after Ms. Avant complained of this treatment to Wheat and Li that Li relented. In other words, Li prioritized the time-off request of a non-Black employee over that of Ms. Avant.

48. Ms. Avant's requests for paid time off were subjected to differential scrutiny, whereas non-Black employees' requests were routinely granted. This was even the case where Li cited to "short staffing" as a reason to deny a request, or modify it to shorten the duration

of the time off, while at the same time granting *subsequent* requests for others on the same days.

49. Throughout this period, non-Black employees were given a high degree of freedom and flexibility with regards to break times and requests for time off. Several non-Black employees regularly took up to 15 cigarette breaks per day at their discretion.

50. Meanwhile, Ms. Avant was regularly questioned by Li regarding her lunch breaks, where she went on her breaks, and their timing. This scrutiny was intense enough that eventually, Ms. Avant relented and started eating her lunch alone at her desk to avoid the confrontations with Li. This treatment was unique to her and was not visited on non-Black employees in the same department.

51. Keith Evans, the former Human Rights Manager at Defendant CRRC Sifang told investigators that Ms. Avant raised these issues with Li and her differential treatment to him "constantly."

52. Ms. Avant was subjected to this excessive monitoring while non-Black employees, including Wheat but also others in her department, were not.

53. Ms. Avant was subjected to this abusive and belittling treatment by Li while non-Black employees, including others in her department, were not.

54. Ms. Avant was subjected to differential application and enforcement of company policies, including regarding her appearance, vacation and time-off policies, and mandatory work trip procedures, while non-Black employees, including others in her department, were not, amounting to a change in the terms and conditions of her employment, based on her race.

55. Some time in November of 2019, Ms. Avant's supervisor, Wheat, passed on Ms. Avant's concerns and complaints of differential treatment to Li and to Human Resources.

*Hostile Work Environment and Constructive Discharge of Plaintiff*

56. By November of 2019, Ms. Avant had been subjected to months of disparate treatment, excessive monitoring, and had been publicly humiliated by her Li, her boss, in front of other employees.

57. As attested to by others in her department, Ms. Avant was being singled out and set up to fail.

58. For example, she was blamed for shoddy work done by others, despite the fact that Li and management knew or should have known that this was not her work and that she was deliberately not being given information needed to accomplish her tasks.

59. In effect, Ms. Avant's working conditions became intolerable and, in late November of 2019, despite trying to address the situation directly, she finally came to accept that Li did not want her there and was looking for any reason to get rid of her.

60. Around this time, Ms. Avant, wanting to avoid a seemingly inevitable termination and unable to deal with the intensely hostile working environment she had been subjected to, submitted a letter of resignation to Marina Popovic, then the Human Resources Manager of CRRC Sifang. Her last day was to be December 13, 2019.

61. In her resignation letter, Ms. Avant stated that certain employees of CRRC made the workplace "hostile" and "uncomfortable."

62. After learning that Ms. Avant's employment would be ending, he confronted her and warned her not to tell any other employee why she was leaving, or her employment would be terminated.

63. Despite receiving approximately three weeks notice, Defendant did not bother to schedule an exit interview with Ms. Avant until her last day. Company practice was to hold exit interviews around 2:30PM on an employee's final day. The Company finally offered a time at or after 5PM for her exit interview. As she was entitled to leave—and given the late notice—Ms. Avant reasonably demurred.

64. As a result of Defendant's discriminatory treatment, Ms. Avant has suffered from depression, sleeplessness, and emotional distress that impacted her day-to-day quality of life.

## VII.      COUNT I: TITLE VII OF THE CIVIL RIGHTS ACT: DISPARATE TREATMENT, CONSTRUCTIVE DISCHARGE

65. Paragraphs 1-64 are incorporated and realleged herein.

66. Defendant and its management subjected Plaintiff to differential treatment based solely on her race.

67. Based on her race, Plaintiff was subjected to abusive and unprofessional treatment by her boss, Vince Li, who humiliated her in front of her coworkers, undermined her ability to complete her work, differentially evaluated her work and excessively monitored her, creating a hostile atmosphere that Plaintiff reasonably believed would imminently result in her termination.

68. Based on her race, Plaintiff was subjected to excessive monitoring in the workplace, by her boss and other management employees.

69. Based on her race, Defendant interfered with Plaintiff's performance of her work tasks, for which she was blamed.

70. Based on her race and racial stereotypes, Plaintiff was baselessly accused of theft, and no corrective measure was taken after the allegedly stolen part was found.

71. Plaintiff was denied time off she was entitled to, or was subjected to excessive scrutiny of her requests, where this was not done to non-Black employees.

72. Defendant created such a hostile work environment and one where Plaintiff was clearly being set up to fail and forced out of her position, that no reasonable person could have been expected to continue to work effectively, amounting to a constructive discharge of Plaintiff.

73. Plaintiff suffered adverse employment actions when she was subjected to a hostile work environment, differential and discriminatory application of company policies, and discharge.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of Title VII; and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages under Title VII for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## VIII. COUNT II: 42 USC SEC. 1981 OF THE CIVIL RIGHTS ACT OF 1866: DISPARATE TREATMENT, CONSTRUCTIVE DISCHARGE

74. Paragraphs 1-73 above are incorporated and re-alleged herein.

75. Plaintiff is a Black woman who in the course of her employment was subjected to

adverse employment actions, including constructive discharge, based on her race.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of Section 1981 of the Civil Rights Act of 1866; and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages under Section 1981 of the Civil Rights Act of 1866 for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## IX.    COUNT III: ILLINOIS HUMAN RIGHTS ACT: DISPARATE TREATMENT, CONSTRUCTIVE DISCHARGE

76. Paragraphs 1-75 above are incorporated and re-alleged herein.

77. Defendant violated 775 ILCS 5/ *et seq*. when it engaged in a course of conduct harassing

Plaintiff, subjecting her to disparate treatment, and constructively discharging her,

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 775 ILCS 5/ *et seq* the Illinois Human Rights Act; and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages under the Illinois Human Rights Act for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## X.    COUNT IV: RETALIATION: TITLE VII OF THE CIVIL RIGHTS ACT

78. Paragraphs 1-77 above are incorporated and re-alleged herein.

79. Plaintiff engaged in protected activity by raising complaints about her discriminatory treatment to her immediate supervisor and her boss, as well as to human resources figures.

80. Defendant's management was aware of the protected activity in which Plaintiff engaged.

81. In response to Plaintiff's complaints of her discriminatory treatment, Defendant took no meaningful measures to stop her hostile treatment and in fact, several instances of discriminatory treatment took place after her complaints.

82. Plaintiff was expressly threatened not to discuss her treatment or face immediate termination.

83. Plaintiff was subjected to constructive discharge as a result of her engaging in protected activity.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 42 USC Sec. 2000e *et seq* ("Title VII"); and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive and compensatory damages for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## XII.    COUNT VI: RETALIATION: ILLINOIS HUMAN RIGHTS ACT

84. Paragraphs 1-83 above are incorporated and re-alleged herein.

85. Plaintiff engaged in protected activity by raising complaints about her discriminatory treatment to her immediate supervisor and her boss, as well as to human resources figures.

86. Defendant's management was aware of the protected activity in which Plaintiff engaged.

87. In response to Plaintiff's complaints of her discriminatory treatment, Defendant took no meaningful measures to stop her hostile treatment and in fact, several instances of discriminatory treatment took place after her complaints.

88. Plaintiff was subjected to hostile and adverse workplace treatment and constructive discharge as a result of her engaging in protected activity.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 42 USC Sec. 2000e *et seq* ("Title VII"); and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just

## XIII.   COUNT VII: TITLE VII HOSTILE WORK ENVIRONMENT

89. Paragraphs 1-88 above are incorporated and re-alleged herein.

90. Plaintiff was subject to unwelcome harassment, in the form of excessive monitoring, interference with her stated job duties, undermining of her work, public humiliation, degrading, humiliating, and unremediated accusations of theft and dishonesty, disparate application of work rules, and an atmosphere of disrespect.

91. This treatment was based on her race, and non-Black employees in her department were not subject to this treatment, as corroborated by witness statements to investigators.

92. This conduct was constant for a period of at least several months, happening regularly throughout workweeks, and culminating in Plaintiff's constructive discharge.

93. The intensity and confrontational nature of this conduct by the Company's personnel against the Plaintiff caused her emotional distress, including an episode where she broke down in tears on the job. The conduct was beyond what a reasonable person would be expected to endure in a workplace.

94. This conduct was engaged in by supervisory and management personnel, and in certain instances was known to management and no remedial action was taken to prevent it.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 42 USC Sec. 2000e *et seq* ("Title VII"); and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just

## XIV.  COUNT VIII: 42 USC SECTION 1981 HOSTILE WORK ENVIRONMENT

95. Paragraphs 1-94 above are incorporated and re-alleged herein.

96. Plaintiff was subject to unwelcome harassment, in the form of excessive monitoring, interference with her stated job duties, undermining of her work, public humiliation, degrading, humiliating, and unremediated accusations of theft and dishonesty, disparate application of work rules, and an atmosphere of disrespect.

97. This treatment was based on her race, and non-Black employees in her department were not subject to this treatment, as corroborated by witness statements to investigators.

98. This conduct was constant for a period of several months, happening regularly throughout workweeks.

99. The intensity and confrontational nature of this conduct by the Company's personnel against the Plaintiff caused her emotional distress, including an episode where she broke down in tears on the job. The conduct was beyond what a reasonable person would be expected to endure in a workplace

100.    This conduct was engaged in by supervisory and management personnel, and in certain instances was known to management and no remedial action was taken to prevent it.

WHEREFORE, Plaintiff prays this Honorable Court,
   A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 42 USC Sec. 1981; and
   B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
   C. Award Plaintiff punitive damages and compensatory damages for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
   D. Award Plaintiff prejudgment interest on her damages award; and
   E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
   F. Award Plaintiff her reasonable costs and attorneys' fees; and
   G. Grant the Plaintiff such other and further relief as this Court deems equitable and just

## XV.    COUNT IX: ILLINOIS HUMAN RIGHTS ACT HOSTILE WORK ENVIRONMENT

101.    Paragraphs 1-100 above are incorporated and re-alleged herein.

102.     Plaintiff was subject to unwelcome harassment, in the form of excessive monitoring, interference with her stated job duties, undermining of her work, public humiliation, degrading, humiliating, and unremediated accusations of theft and dishonesty, disparate application of work rules, and an atmosphere of disrespect.

103.     This treatment was based on her race, and non-Black employees in her department were not subject to this treatment, as corroborated by witness statements to investigators.

104.     This conduct was constant for a period of several months, happening regularly throughout workweeks.

105.     The intensity and confrontational nature of this conduct by the Company's personnel against the Plaintiff caused her emotional distress, including an episode where she broke down in tears on the job. The conduct was beyond what a reasonable person would be expected to endure in a workplace

106.     This conduct was engaged in by supervisory and management personnel, and in certain instances was known to management and no remedial action was taken to prevent it.

WHEREFORE, Plaintiff prays this Honorable Court,
    A. Enter judgment in Plaintiff's favor and against Defendant, for their violations of 775 ILCS 5/ et seq. and
    B. Award Plaintiff actual damages suffered, including lost wages, back pay, and front pay; and
    C. Award Plaintiff punitive damages and compensatory damages for embarrassment, anxiety, and humiliation, and emotional distress suffered; and
    D. Award Plaintiff prejudgment interest on her damages award; and
    E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating against, harassing, and retaliating against Plaintiff and any employee; and
    F. Award Plaintiff her reasonable costs and attorneys' fees; and
    G. Grant the Plaintiff such other and further relief as this Court deems equitable and just

**PLAINTIFF DEMANDS TRIAL BY JURY PURSUANT TO FED. R. CIV. P. 8**

Respectfully submitted by and through Plaintiff's attorney,


__/s/Ramsin Canon_____

Ramsin G. Canon, Esq.

Canon Law Group, P.C.

IL State Bar #: 6319074

73 W Monroe Street

Suite 500

Chicago, IL 60603

Direct: 312-625-9199

ramsin@canonlawgroup.com